UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| BENJAMIN CRAIG (LEAD CASE) | CIVIL ACTION 3:17-CV-01005 |
| VERSUS | JUDGE HICKS |
| CENTURYLINK INC., *et al.* | MAGISTRATE JUDGE PEREZ-MONTES |

| | |
|---|---|
| DON J. SCOTT | CIVIL ACTION 3:17-CV-01033 |
| VERSUS | JUDGE HICKS |
| CENTURYLINK INC., *et al.* | MAGISTRATE JUDGE PEREZ-MONTES |

| | |
|---|---|
| AMARENDRA THUMMETI | CIVIL ACTION 3:17-CV-01065 |
| VERSUS | JUDGE HICKS |
| CENTURYLINK INC., *et al.* | MAGISTRATE JUDGE PEREZ-MONTES |

## MEMORANDUM ORDER

Potential class plaintiffs filed Motions to Appoint Lead Plaintiff and Lead Counsel (Docs. 25, 26, 28, 29) in three consolidated cases against CenturyLink and other Defendants for violations of the Securities Exchange Act of 1934. The State of Oregon's motion to be appointed Lead Plaintiff (Doc. 28) is GRANTED. The State of Oregon's motion to appoint Bernstein, Litowitz, Berger & Grossman, L.L.P. and Stoll

Berne[1] as Co-Lead Counsel (Doc. 28) is also GRANTED. The remaining motions (Docs. 25, 26, 29) are DENIED.

I.   <u>Background</u>

Before the Court is a complaint filed pursuant to the Securities Exchange Act of 1934 (15 U.S.C. § 78aa, *et seq.*) by Plaintiff Benjamin Craig ("Craig"), individually and on behalf of all others similarly situated. The named defendants are CenturyLink Inc. ("CenturyLink") (its common stock is traded on the New York Stock Exchange ("NYSE")), Glen F. Post III ("Post") (the CEO and President of CenturyLink Inc. at all relevant times, and R. Stewart Ewing, Jr. ("Ewing") (CFO, Executive Vice President, and Assistant Secretary of CenturyLink Inc. at all relevant times).

Craig alleges a federal securities class action pursuant to on behalf of all investors who purchased or otherwise acquired CenturyLink common stock between March 1, 2013 and June 16, 2017 (the "Class Period"). Craig alleges that CenturyLink publicly issued materially false and misleading statements and omitted material facts regarding its compliance with applicable laws and regulations, causing its stock prices to artificially inflate. Craig alleges that he and other investors suffered significant losses and damages when the truth as to CenturyLink's unlawful business practices emerged and its stock prices fell. Craig seeks certification of the class action, appointment of himself as class representative, appointment of his

---

[1] Also known as "Stoll Stoll Berne Lokting & Schlachter P.C."

attorney as lead counsel, a jury trial, compensatory damages, costs (including expert

fees), attorney fees, and injunctive relief.[2]

Three related stockholder suits have been filed: Don J. Scott ("Scott") filed

Scott v. CenturyLink, No. 17-1033 (W.D. La.)[3]; Amarendra Thummeti filed

Thummeti v. CenturyLink, et al., 3:17-cv-01065 (W.D. La.); and Michael Barbree and

Glen Walker filed Barbree, et al. v. Bejar, et al., No. 3:17-cv-01177 (W.D. La.).

Barbree has since been voluntarily dismissed (Barbree, No. 3:17-cv-01177, Doc. 3).

Thus, to date, there are three stockholder actions against CenturyLink in the

Western District of Louisiana.

The Thummetti case was filed first, on June 21, 2017. Attorney Jeremy Alan

Lieberman of the Pomerantz Law Firm published a notice of the proposed class action

in the Globe Newswire on June 21, 2017 (See Craig, No. 17-1005, Doc. 25-5).[4]

Four Motions to Appoint Lead Plaintiff have been filed by potential class

plaintiffs in the Craig case: KBC Asset Management NV ("KBC") (Doc. 25); the Police

---

[2] Craig's case was originally filed in the Southern District of New York (Doc. 1). On stipulation of the parties and a finding that the case could have originally been brought in the Western District of Louisiana, Monroe Division, the case was ordered transferred to the Western District of Louisiana (Doc. 8).

[3] Scott's related action is also a federal securities class action on behalf of all persons and entities who purchased or otherwise acquired CenturyLink securities between March 1, 2013 and June 19, 2017. In Scott, Plaintiff Don J. Scott named as Defendants CenturyLink, Post, Ewing, and David D. Cole ("Cole"). Scott also seeks certification of his suit as a class action, appointment of Scott as class representative, appointment of Scott's counsel as Class Counsel, damages, costs, attorney fees, and injunctive relief (Doc. 1).

[4] The PSLRA first requires the person who files the initial action to publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. See 15 U.S.C. §§ 78u–4(a)(3)(a)(i); In re Universal Access, Inc. Sec. Litig., 209 F.R.D. 379, 383 (E.D. Tex. 2002).

and Fire Retirement System of the City of Detroit and the Laborer's Pension Trust Fund–Detroit and Vicinity (Doc. 26) ("Detroit"); the State of Oregon on behalf of the Oregon Public Employees Retirement Fund (Doc. 28) ("Oregon"); and Amalgamated Bank, as Trustee for the Long View Collective Investment Fund (Doc. 29) ("Amalgamated Bank").[5]  Other potential plaintiffs are Sona Andresian (Docs. 21, 35), Mark D. Alger, Allen Feldman, Art Kleppen, Essex Lacy, and Tae Yi (Docs. 22, 41).[6]

The Movants' motions to appoint Lead Plaintiff are now before the Court for disposition, and are set for hearing on October 25, 2017.  Since filing those motions, Oregon and KBC filed a Joint Motion to Continue the Motion Hearing (Doc. 75).  That motion is considered first below.

II.    Law and Analysis

A.    The Joint Motion to Continue the Motion Hearing is denied.

Oregon and KBC filed a Joint Motion to Continue the Motion Hearing (Doc. 75) which is opposed by Defendants (Doc. 77).

The Joint Motion to Continue (Doc. 75) is hereby DENIED.  The joint movants seek a continuance principally because, on October 6, 2017, the U.S. Judicial Panel on Multidistrict Litigation (the "Panel") issued a Conditional Transfer Order ("CTO") conditionally transferring these securities actions to the United States District Court

---

[5] The Movants also filed motions to consolidate the Craig and Scott cases (Docs. 25, 26, 28, 29) which were granted.

[6] Other motions to consolidate and appoint Lead Plaintiff were filed and withdrawn by potential plaintiffs Sona Anresian (Docs. 21, 35), and Mark D. Alger, Allen Feldman, Art Kleppen, Essex Lacy, and Tae Yi (Docs. 22, 41).

for the District of Minnesota.  But as correctly noted by Defendant, the CTO is merely "an administrative act of the Clerk which can be and will be vacated upon the showing of good cause by any party."  *In re* Grain Shipments, 319 F. Supp. 533, 534 (J.P.M.L.1970).  Neither the PSLRA nor the balance of jurisprudential authority indicate that the CTO requires a continuance or stay of this litigation.  See Panel Rule 2.1(d); see also e.g., Khunt v. Alibaba Grp. Holding Ltd., 102 F.Supp.3d 523, 530 (S.D.N.Y.2015);  *In re* Duke Energy Corp. Sec. Litig., 02 CIV.3960 JSR, 2002 WL 1933798, at \*1 (S.D.N.Y. Aug. 20, 2002).

However, the Court further finds that a hearing is not affirmatively required, and would not meaningfully aid in the Court's decision regarding the competing motions to approve a lead plaintiff.  In the interest of efficiency, therefore, the October 25, 2017 hearing is hereby CANCELED.

## B.    Oregon is appointed as Lead Plaintiff.

According to 15 U.S.C. § 78u4(a)(3)(B)(ii), "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed, and any party has sought to consolidate those actions for pretrial purposes or for trial, the court shall not make the determination required by clause (i) until after the decision on the motion to consolidate is rendered. As soon as practicable after such decision is rendered, the court shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions in accordance with this paragraph."

Under 15 U.S.C. § 78u–4(a)(3)(B)(i) of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which amended the Securities Exchange Act of 1934 by adding Section 21D, 15 U.S.C. § 78u–4, in class actions brought under federal securities laws, "the court shall consider any motion made by a purported class member" in determining the adequacy of a proposed lead plaintiff to oversee the class action. Furthermore, "the presumption [of the adequacy of the plaintiff with the largest financial interest in the outcome of the litigation] described in [15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)] may be rebutted only upon proof by a member of the purported plaintiff class that the proposed individual or entity will not fairly and adequately protect the interests of the class or that he/she/or it is subject to unique defenses that render [him/her/or it] incapable of adequately representing the class." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II). See In re Enron Corp. Sec. Litigation, 206 F.R.D. 427, 439 (S.D. Tex. 2002).

Congress directed the Court to "consider any motion made by a purported class member" to determine the most adequate plaintiff. 15 U.S.C. § 78u–4(a)(3)(B)(i). Rebuttal of the presumption of the most adequate plaintiff is limited to "proof by a member of the purported plaintiff class." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II). Discovery regarding the issue "may be conducted by a plaintiff" only if "the plaintiff first demonstrates a reasonable basis" for finding the presumptively most adequate plaintiff inadequate. See Gluck v. CellStar Corp., 976 F. Supp. 542, 550 (N.D. Tex. 1997) (citing 15 U.S.C. § 78u–4(a)(3)(B)(iv)); see also Greebel v. FTP Software, Inc., 939 F.Supp. 57, 60 (D. Mass. 1996).

Wresting control of securities class actions from lawyers with nominal plaintiffs and giving the power to large investors will most benefit all investors if it is done at the outset of the litigation. Gluck, 976 F. Supp. at 550. Congress intended that appointment of a Lead Plaintiff occur at an early stage of the litigation, before consideration of certification issues. See Gluck, 976 F. Supp. at 550.

The PSLRA requires the Court to appoint the "most capable" member or members of the purported plaintiff class who can adequately represent the class members' interest. See Buettgen v. Harless, 263 F.R.D. 378, 380 (N.D. Tex. 2009) (citing 15 U.S.C. § 78u–4(a)(3)(B)(I)). The statute requires a court to presume that the most adequate plaintiff is the person or group of persons that:

    (1) filed the complaint or a motion in response to a notice;

    (2) has the largest financial interest in the relief sought by the class; and

    (3) otherwise satisfies the requirements of Rule 23 of the Federal Rules
    of Civil Procedure.

See Buettgen, 263 F.R.D. at 380-81 (citing 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)). This presumption can be rebutted only by proof offered by a class member that the presumptively most adequate plaintiff:

    (aa) will not fairly and adequately protect the interests of the class; or

    (bb) is subject to unique defenses that render such plaintiff incapable of
    adequately representing the class.

See Buettgen, 263 F.R.D. at 380-81 (citing 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II)).

In determining the largest financial interest, courts look to: (1) the number of shares purchased during the class period; (2) the number of net shares purchased

during the class period; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs.  See Buettgen, 263 F.R.D. at 380-81 (citing In re Enron Corp. Sec. Litig., 206 F.R.D. at 440); Gluck, 976 F. Supp. at 546); see also In re Waste Management, Inc. Sec. Litigation, 128 F. Supp. 2d 401, 411 (S.D. Tex. 2000).

To qualify as presumptive lead plaintiffs, a plaintiff or group of plaintiffs must also satisfy the requirements of Rule 23—in particular, "the claims or defenses of the representative parties are typical of the claims or defenses of the class" and "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3) and (4); see  In re BP, PLC Sec. Litig., 758 F.Supp.2d 428, 435 (S.D. Tex.2010) (citing Enron, 206 F.R.D. at 441 ("Typicality and adequacy are directly relevant to the choice of the Lead Plaintiff as well as of the class representative in securities fraud class actions.")); see also In re Oxford Health Plans, Inc. Sec. Litig., 182 F.R.D. 42, 49 (S.D.N.Y.1998) ("Typicality and adequacy of representation are the only provisions [of Rule 23(a)] relevant to a determination of lead plaintiff under the PSLRA.").

Plaintiff Craig asks, in his complaint, to be made Lead Plaintiff.  Craig filed a complaint in which he appears to show he is an individual investor who purchased $441.18 of CenturyLink common stock from March 1, 2013 through June 16, 2017[7]

---

[7] It appears that Craig spent a total of $24.51 each time he purchased CenturyLink stock.

(Craig case, Doc. 1). Craig clearly has a relatively small financial interest in this case.

Plaintiff Scott asks, in his complaint (the first-filed) to be made Lead Plaintiff in his complaint, shows he published appropriate notice of the proposed class action, and shows he is an individual investor who spent $16,963.05 purchasing CenturyLink common stock between March 1, 2013 and June 16, 2017 (Scott case, Doc. 1-1). Scott also has a relatively small financial interest in this case.

Within the Craig case, KBC filed a motion be appointed Lead Plaintiff (Doc. 25). KBC shows it is an institutional investor that has one of the largest financial stakes in the litigation.[8] However, the PSLRA imposes restrictions on "professional plaintiffs." "Except as the court may otherwise permit, consistent with the purposes of this section, a person may be a lead plaintiff, or an officer, director, or fiduciary of a lead plaintiff, in no more than 5 securities class actions brought as plaintiff class actions pursuant to the Federal Rules of Civil Procedure during any 3-year period." See 15 U.S.C.A. § 78u-4(a)(3)(B)(vi). KBC shows in its Certification (Doc. 245-3) that it has sought to serve as lead counsel in 13 SEC class actions within the last 3 years, and a cursory review of those cases shows KBC was appointed Lead Plaintiff in 8 of those cases. Therefore, KBC should be disqualified from being appointed lead counsel in this case pursuant to 15 U.S.C.A. § 78u-4(a)(3)(B)(vi).

The "Detroit Institutional Investor Group" ("Detroit"), comprised of the Police and Fire Retirement System of the City of Detroit ("PFRS-D"), and the Laborers'

---

[8] KBC claims a loss of $13,166,113 under a LIFO accounting basis.

Pension Trust Fund-Detroit and Vicinity ("LPTF-D"), also moved to be appointed Lead Plaintiff (Doc. 26). Detroit claims to have incurred a total loss of $1,047,041.88 (as calculated on a LIFO basis) during the class transaction period. The PFRS-D and the LPTF-D state they are both currently serving as lead plaintiff in two cases, and that the PFRS-D has served as lead counsel in one other case within the past three years (Doc. 26-1). Detroit concedes it does not have the largest financial interest in this case (Doc. 45).

The State of Oregon moved to be appointed Lead Plaintiff (Doc. 28), and shows the Oregon Public Employees Retirement Fund ("Oregon") is an institutional investor that has sustained a loss of about $6.9 million on a FIFO basis, or $6.3 million on a LIFO basis, over the Class Period, and purchased 1,160,139 shares, or 560,340 net shares (Doc. 44). It does not appear that Oregon has served as Lead Plaintiff in any class action in the last three years. Although Oregon is the second-largest institutional investor in this case, with the second-largest losses, KBC contends Oregon has a conflict of interest because it purchased CenturyLink bonds during the class period. Oregon sold some of its bonds (1,615,000) for a small gain of $121,362.50, and still holds 2,420,000 CenturyLink bonds (Doc. 28-4). KBC contends Oregon should not be appointed Lead Plaintiff because it did not sustain a loss on its bonds, so it does not have standing to represent the bond-holders.

It is not a requirement that a lead plaintiff under the PSLRA suffer losses on each type of security that may be at issue in the class action. The purpose of the lead plaintiff section of the PSLRA is to ensure that securities litigation is investor-driven,

as opposed to lawyer-driven.  In re Nw. Corp. Sec. Litig., 299 F. Supp. 2d 997, 1007 (D.S.D. 2003) (citing In re Initial Public Offering Securities Litigation, 214 F.R.D. 117, 123 (S.D.N.Y. 2002); Aronson v. McKesson HBOC, Inc., 79 F. Supp. 2d 1146, 1150–51 (N.D. Cal. 1999).  Therefore, the fact that Oregon did not suffer a loss in CenturyLink bonds does not preclude it from becoming Lead Plaintiff.

Amalgamated Bank, as Trustee for the LongView Collective Investment Fund ("Amalgamated Bank/LongView Fund") also filed a motion to be appointed Lead Plaintiff (Doc. 29).  Amalgamated Bank shows it had a loss of $1,243,105 on a LIFO basis, and that it purchased 136,685 shares, or (23,773) net shares.  Amalgamated Bank/LongView Fund has recently applied to be Lead Plaintiff (the decision has not been made) in another SEC case in the Eastern District of Pennsylvania, Waterford Township Police & Fire Retirement System, 2:17-cv-01476, Doc. 5 (E.D. Pa.). Amalgamated Bank/LongView Fund was appointed Lead Plaintiff in an SEC case in the Eastern District of Virginia, Klein v. Brock, 4:15-cv-00016, Doc. 11 (E.D. Va.). Amalgamated Bank concedes it does not have the largest loss in this case (Doc. 45).

Since Oregon has the largest loss after KBC, it is presumed to be the most appropriate lead plaintiff.  Oregon's claim for losses on commons stocks, the claims or defenses of the representative parties are typical of the claims or defenses of the class" and "the representative parties will fairly and adequately protect the interests of the class."  The fact that Oregon did not sustain a loss when it sold some of its CenturyLink bonds does not provide it with a "unique defense."  There is little difference between Oregon, who did not sustain a loss on its bonds, and a party who

does not have any CenturyLink bonds at all–neither has sustained a loss on CenturyLink bonds, while both suffered losses on CenturyLink stock.

Therefore, Oregon's motion to be appointed Lead Plaintiff (Doc. 28) is GRANTED.

### B.     Oregon's attorneys are appointed Lead Counsel.

The PSLRA provides that the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u–4(a)(3)(B)(v).     Oregon seeks to appoint Bernstein, Litowitz, Berger, & Grossmann, L.L.P. of New York and Stoll Berne of Oregon as Co-Lead Counsel (Doc. 28). The Court has reviewed the resume of each firm and is satisfied that each firm could adequately represent the plaintiff class in this action. Lead Counsel will be ordered to enroll in this action immediately. It is noted that Lead Counsel will not be permitted to conduct all business in this case solely through local counsel or by phone, and will be expected to prosecute this case in Louisiana.

## III. Order

Based on the foregoing, IT IS ORDERED that the Joint Motion to Continue (Doc. 75) is DENIED, and the October 25, 2017 hearing is hereby CANCELED.

IT IS FURTHER ORDERED that Oregon's motions to be appointed Lead Plaintiff, and to have Bernstein, Litowitz, Berger & Grossman, L.L.P. and Stoll Berne[9] appointed as Co-Lead Counsel (Doc. 28) ARE GRANTED.

IT IS FURTHER ORDERED that the motions for Lead Plaintiff and Lead Counsel filed by Craig (Doc. 1), Scott (Case No. 17-1033, Doc. 1), KBC (Doc. 25), Detroit (Doc. 26), and Amalgamated Bank (Doc. 29) are DENIED.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this __20th__ day of October, 2017.

Joseph H.L. Perez-Montes
United States Magistrate Judge

---

[9] Also known as "Stoll Stoll Berne Lokting & Schlachter P.C."